IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT LEE HATCHER III | Criminal Action No.<br><br>1:14-CR-145-WSD |

### Government's Sentencing Memorandum

The United States of America, by Sally Quillian Yates, United States Attorney, and Teresa D. Hoyt, Assistant United States Attorney for the Northern District of Georgia, files this Government's Sentencing Memorandum.

**1.  Application of the Aggravating Role Enhancement is Appropriate**

The presentence report recommends that defendant Hatcher receive a four-level enhancement for aggravating role in the offense, pursuant to U.S.S.G. § 3B1.1(a) because he was the organizer or leader of criminal activity that involved five or more participants or that was otherwise extensive.  (PSR ¶ 44). The enhancement is properly applied.

The guidelines section has two factual requirements:  (1) that the defendant played a leadership or organizational role and (2) that the criminal activity involved the specified number of participants *or* was otherwise extensive.  *United States v. Yates*, 990 F.2d 1179, 1181-82 (11th Cir. 1993).

Hatcher was an organizer or leader of the ticket-switching/fraudulent refund scheme to defraud The Home Depot. A defendant may qualify as an "organizer or leader" (and there may be more than one) of a criminal activity if he exercises some control over the activity, coordinates the fraudulent scheme, directs others as part of the scheme, or has decision-making authority. *United States v. Vallejo*, 297 F.3d 1154, 1169 (11th Cir. 2002); *United States v. Gallego*, 247 F.3d 1191, 1201 n.21 (11th Cir. 2001); *Yates*, 990 F.2d at 1182; *see* U.S.S.G. § 3B1.1, cmt. n.4 (listing relevant factors in determination). Recruiting others into the scheme is sufficient to support a role enhancement. *United States v. Thomas,* 446 F.3d 1348, 1355 n.2 (11th Cir. 2006).

Here, it is undisputed that Hatcher was the person in charge when he engaged in the ticket-switching/refund activity with Lynch and others. He may not have had a title, such as "kingpin" or "boss," but such designations are not controlling under the guideline section. U.S.S.G. § 3B1.1, cmt. n. 4. Hatcher admitted that he recruited Lynch to join in the criminal activity and taught him the scheme, an admission confirmed by Lynch. (PSR, ¶¶ 22, 29, 31). According to Lynch, it was at Hatcher's direction that two people always went into the stores, one to serve as a lookout and one to do the ticket switch. (PSR, ¶ 31 ). Lynch also reported that Hatcher kept the refund cards that were generated when the two of them worked together in the scheme, paying Lynch a smaller percentage of the proceeds from the subsequent sale of the cards. (PSR, ¶ 31). When Hatcher was detained in November 2013 following a ticket-switching transaction

in an Opelika, Alabama Home Depot store, he was with an individual named Antonio Reid. (PSR, ¶ 19). When Hatcher was interviewed subsequent to the incident, he stated that he had only picked Reid up to use in the transaction because Reid had a driver's license, and that Reid "knew nothing about what was going on." (PSR, ¶ 20). Hence, Hatcher was instructing Reid on that occasion on how to carry out the ticket-switching transaction.

To satisfy the second predicate of the four-level aggravating role enhancement, the government may show either that the activity involved five or more "participants" or that it was "otherwise extensive." U.S.S.G. § 3B1.1(a). Both are true in this case.

As to the former, a "'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." *Id.*, cmt. n.1. The defendant counts as one of the "participants." *United States v. Holland*, 22 F.3d 1040, 1045 (11th Cir. 1994). In this case, in addition to Hatcher's three co-defendants, the conspiracy involved persons other than Arthur James Freeman to whom defendant Hatcher sold the fraudulently obtained refund cards (PSR ¶ 24); persons from whom he obtained fraudulent driver's licenses to use in the scheme (PSR, ¶¶ 23, 30); and other individuals who participated in the ticket-switching/fraudulent refund card activity (PSR, ¶¶ 19, 24, 29).

As to the latter, even when the activity involves fewer than five participants, the four-level adjustment is warranted where the operation is "otherwise extensive." U.S.S.G. § 3B1.1(a). Under the "otherwise extensive" prong, no set

number of criminally responsible participants is required.  *Holland*, 22 F.3d at 1045.[1]  Rather, "[i]n assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered," including outsiders who provided "unknowing services."  U.S.S.G. § 3B1.1, cmt. n.3, *quoted in Holland*, 22 F.3d at 1045.  Moreover, consistent with § 1B1.3, the Court may consider all acts or omissions that were part of the same course of conduct or common scheme as relevant conduct in deciding whether a criminal activity was "otherwise extensive."  *Holland*, 22 F.3d at 1045.  Although the Eleventh Circuit "does not employ a precise definition for the 'otherwise extensive' standard," it has recognized "a number of factors relevant to the extensiveness determination, including the length and scope of the criminal activity as well as the number of persons involved."  *Id.* at 1046.

Hatcher's criminal activity was "otherwise extensive" under these criteria.  In addition to Hatcher's three co-defendants, there were at least two other individuals, identified by name in the PSR, who were integrally and actively involved in the ticket-switching/fraudulent refund scheme.  (PSR ¶¶ 19, 22).  In addition, to these individuals, the unidentified persons who provided fraudulent driver's licenses for use in the scheme, and the unidentified persons who purchased the fraudulently-obtained refund cards, Hatcher used the unknowing

---

[1] To show that the defendant held a leadership role, however, "there must be at least one participant in addition to the defendant."  *Holland*, 22 F.3d at 1045 n.8; *see also* U.S.S.G. § 3B1.1, cmt. n.2.

and unwitting services of hundreds of Home Depot employees in numerous stores across the country who rang up sales for ticket-switched items and issued refund cards when he returned the items later for their actual and higher price.

The scheme took place over a period of at least five to six years, and was carried out in multiple Home Depot stores in almost 200 cities in at least 11 states (PSR ¶¶ 17, 29 ); s*ee United States v. Rodriguez*, 981 F.2d 1199, 1200 (11th Cir. 1993) (holding that evidence that defendant was organizing a multi-jurisdiction drug transaction worth $350,000 sufficient to find "otherwise extensive" criminal activity); *United States v. Colon-Munoz*, 318 F.3d 348, 364-65 (1st Cir. 2003) (upholding determination that bank fraud involving a number of unknowing people and a series of documents was "otherwise extensive"); *Morphew v. United States*, 909 F.2d 1143, 1145 (8th Cir. 1990) (finding it "plain that an enterprise generating a 'take' of over a quarter million dollars can properly be described as 'extensive'"). Given the number of years that Hatcher actively participated in this scheme, the number of people involved, and the fact that the scheme was carried out in more than 200 stores in eleven states from Georgia to Texas, the relevant criminal activity here was "otherwise extensive" within the meaning of the guidelines section.

## 2. A Guidelines Sentence is Reasonable

The sentencing court is required to impose a reasonable sentence. *United States v. Booker*, 543 U.S. 220, 261 (2005). The sentence must be both procedurally

and substantively reasonable.  *Gall v. United States*, 552 U.S. 38 (2007). Procedural reasonableness requires that the guidelines be correctly calculated. *Id.* at 49 (citing *Rita v. United States*, 551 U.S. 338, 347-48 (2007)).  Substantive reasonableness requires that the sentence imposed comport with the factors listed in 18 U.S.C. § 3553(a).  *Gall*, 552 U.S. at 49-50.  Consideration of the § 3553(a) factors in this case establishes that a sentence in the middle to high end of the guidelines range is reasonable.

### A. The nature and circumstances of the offense

The nature and circumstances of the offense support the imposition of a middle- to high-end guidelines sentence.  By his own admission, at the time he was detained following his apprehension in Alabama in November 2013, Hatcher had been defrauding The Home Depot with the ticket-switching/fraudulent refund scheme for six years (PSR, ¶ 22).  Hatcher expanded the scheme by recruiting others into it; he taught the scheme to defendant Lynch, and enlisted other individuals to carry it out when Lynch was unavailable.  (PSR, ¶ 20, 22).  He admitted carrying out the scheme at Lowe's as well as The Home Depot (PSR, ¶ 23).  Hatcher carried out the scheme in multiple states across the country.  (PSR, ¶ 24).

After Hatcher was detained in Alabama and interviewed by the United States Secret Service and corporate investigators with The Home Depot, he promised to stop engaging in the fraudulent scheme and to cooperate in the investigation.

On the strength of this false promise, the investigators released Hatcher without arresting and charging him. (PSR, ¶ 24). Hatcher immediately returned to the scheme, in which he continued to engage until he was arrested in a Gwinnett County Home Depot in April 2014. (PSR, ¶ 25). But for his arrest, he doubtless would still be engaging in the criminal activity. Hatcher's longstanding criminal conduct resulted in hundreds of thousands of dollar in loss to The Home Depot. The nature and circumstances of the offense – and in particular, Hatcher's brazen return to the criminal activity after being caught and given a second chance by law enforcement authorities and The Home Depot -- make a middle– to high-end Guidelines sentence appropriate.

### B. The history and characteristics of the defendant

The defendant's longstanding pattern and practice of criminal activity in this case, as well as his prior history, demonstrate that he is a person with little or no respect for the law. His criminal history reflects a probation revocation for failure to report, failure to pay fines, and failure to complete substance abuse evaluations. (PSR, ¶ 51). In April 2014, a warrant for probation violations was issued in connection with Hatcher's conviction for obstruction of a law enforcement officer and family violence battery. (PSR, ¶ 55). The violations alleged were failure to report, failure to pay fines/fees, failure to complete a substance abuse evaluation, failure to complete a hair follicle test, and failure to complete anger management courses. (*Id.*).

Hatcher's failure to comply with his conditions of probation should come as no surprise in light of his flagrant conduct after he was apprehended at the Alabama Home Depot in November 2013. He promised the Secret Service Agent and the Home Depot personnel that he would refrain from future ticket-switching/refund activity, and cooperate in the investigation. (PSR, ¶ 20). He immediately returned to his criminal lifestyle, until he was arrested at another Home Depot for ticket-switching in April 2014. (PSR, ¶ 25). As previously noted herein, but for his arrest, there is no reason to believe that Hatcher would not still be engaged in the scheme. He had no other gainful, verifiable employment. (PSR, ¶¶ 79-84). Hatcher's history and characteristics make a middle- to high-end guidelines sentence appropriate.

### C. The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense

The seriousness of the offense makes a guidelines sentence appropriate. As previously noted, Hatcher admitted engaging in the ticket-switching/fraudulent refund card activity for six years, resulting in hundreds of thousands of dollars in loss to The Home Depot. (PSR, ¶ ¶ 22, 35). By his own admission, Hatcher defrauded Lowe's in a similar fashion. (PSR, ¶ 23). After he was apprehended and gave his word that he would cease his criminal activity, Hatcher immediately returned to it. Moreover, his criminal conduct was in violation of his probationary sentence for another offense. (PSR, ¶ ¶ 56, 59).

The Government also notes that, because The Home Depot was only able to capture transactions covering a three-year period from February 2011 through April 2014, whereas Hatcher admitted in 2013 to engaging in the criminal conduct for at least six years, the loss calculation in this case is likely significantly lower than the loss actually sustained.  Nor does the loss amount take into account countless resources that The Home Depot was required to devote to tracking down and apprehending the defendants, such as the time and effort devoted to the task by corporate investigators, monetary expenses incurred in hiring an outside contractor to pull countless hours of CCTV video to support the investigation, etc.  Last but not least, The Home Depot has a profit-sharing plan with its employees.  The defendants' conduct, which reduced The Home Depot's profit, resulted in a financial loss not only to a corporate entity, but to the company's employees.  Students working to put themselves through college, fathers working a second job to support their families, single working parents, and others in difficult financial circumstances, who were striving to make an honest living, were probably among those affected by Hatcher's widespread, longstanding criminal scheme.

Hatcher's conduct demonstrates serious disrespect for the law.  A middle- to high-end guidelines sentence would demonstrate the consequences of carrying out such crimes, and by extension, promote respect for the law.  The sentence would provide just punishment, and underscore the importance for the defendant to conform his behavior to the demands of society and the law.

### D. The need for the sentence imposed to afford adequate deterrence to criminal conduct

A guidelines sentence is needed to afford adequate deterrence to criminal conduct. It is important that the sentence deter not only this defendant, but others who are now committing or are considering committing the same or similar crimes. The potential for deterrence, for this defendant and others, mitigates in favor of a guidelines sentence.

## Conclusion

For the foregoing reasons, the Government requests that this Court uphold the findings of the probation office regarding the sentencing enhancements, and impose sentence in the middle- to high-end of the guidelines range.

Respectfully submitted,

SALLY QUILLIAN YATES
*United States Attorney*

/s/TERESA D. HOYT
*Assistant United States Attorney*
Georgia Bar No. 218375
Teresa.hoyt@usdoj.gov

600 U.S. Courthouse   75 Spring Street SW   Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

## Certificate of Service

I served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

                Brian Mendelsohn

October 14, 2014

                /s/ TERESA D. HOYT

                TERESA D. HOYT

                *Assistant United States Attorney*