**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| ROBERT LEE HATCHER, III, | : | MOTION TO VACATE |
|     Movant, | : | 28 U.S.C. § 2255 |
| | : | |
| v. | : | CRIMINAL NO. |
| | : | 1:14-CR-145-WSD-JSA-1 |
| UNITED STATES OF | : | |
| AMERICA, | : | CIVIL ACTION NO. |
|     Respondent. | : | 1:15-CV-1817-WSD-JSA |

**MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION**

In the instant § 2255 motion, Movant seeks to challenge the constitutionality of his sentence, which was imposed on October 28, 2014, following a guilty plea entered in the Northern District of Georgia. (Docs. 110, 162).

I.    Procedural History

Petitioner and three co-defendants were indicted by a grand jury in the Northern District of Georgia and charged with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, and fifteen counts of wire fraud in violation of 18 U.S.C. § 1343, in connection with a "ticket-switching" scheme conducted at Home Depot stores all over the country by which Movant and his co-defendants would cover high priced UPC labels on merchandise with lower-priced UPC labels, purchase the items, return them at the higher price to get store credit with a refund balance, and sell those refund cards to others at a discount. (Doc. 11). On July 18, 2014, while represented by Brian Mendelsohn, Movant entered into a guilty plea without a plea agreement to all sixteen charges [Doc. 87], and on

AO 72A
(Rev.8/82)

October 28, 2014, U.S. District Judge William S. Duffey, Jr. sentenced him to a concurrent sixty months of imprisonment on each count plus restitution.[1]  (Doc. 110).

Movant filed a *pro se* § 2255 motion in this Court on May 18, 2015,[2] and raised the following claims:  (1) his guilty plea was involuntary as a result of ineffective assistance of counsel; (2) counsel was ineffective for failing to challenge the loss amount at sentencing; and (3) he was denied meaningful appeal of his sentence because counsel refused to appeal his sentence after being requested to do so.  (Doc. 126, Attach. 1 at 3, 5).  Because the record of this case did not conclusively demonstrate whether Movant's counsel failed to follow Movant's instruction to file an appeal or what, if any, communications occurred between Movant and his attorney, the undersigned believed it prudent to hold a limited evidentiary hearing as to these issues.  (Doc. 141).  The undersigned appointed counsel for Movant and subsequently granted his motion to expand the evidentiary hearing to include all three grounds for relief, and held an evidentiary

---

[1] Movant's co-defendants all pleaded guilty to the single conspiracy count pursuant to plea agreements with the Government.  (Docs. 83, 85, 104).

[2] Under the federal "mailbox rule," both a *pro se* federal habeas petition and a § 2255 motion are deemed to be filed on the date they were delivered to prison authorities for mailing (*i.e.*, signed).  *See Taylor v. Williams*, 528 F.3d 847, 849 n.3 (11th Cir. 2008); *Rodriguez v. United States*, 279 F. App'x 753, 753 (11th Cir. 2008).

hearing on April 13, 2016. (Docs. 146, 157). As relief, Movant seeks to withdraw his guilty plea, or in the alternative, vacate his sentence so that he can raise objections to the loss amount before being resentenced. (Doc. 162 at 30). Movant also asks that if the Court finds that Ground Three is the only viable issue, the Court vacate and reissue the judgment so that he may file a direct appeal. (*Id.*).

For the following reasons, the undersigned **RECOMMENDS** that the motion to vacate [Docs. 110, 162] be **DENIED**.

II.    Applicable Law

A.    Standard of Review

Congress enacted § 2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally-imposed sentences. *United States v. Jordan*, 915 F.2d 622, 625 (11th Cir. 1990). Pursuant to § 2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack." *Hill v. United States*, 368 U.S. 424, 426-27 (1962); *see generally United States v. Hayman*, 342 U.S. 205 (1952).

3

"To obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166 (1982).  Movant must establish that the facts surrounding his claim present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent."  *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

This Court may deny § 2255 relief without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255; *see Long v. United States*, 883 F.2d 966, 968 (11th Cir. 1989).  As discussed below, Movant's § 2255 motion and the record in this case conclusively show that he is entitled to no relief in connection with any of his claims.  Thus, no evidentiary hearing is required.

B.    Ineffective Assistance of Counsel

The standard for evaluating ineffective assistance of counsel claims was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Green v. Nelson*, 595 F.3d 1245, 1239 (11th Cir. 2010).   "An ineffective assistance claim has two components:  A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense."  *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 687).  To establish deficiency, a petitioner is required to establish that "counsel's representation 'fell below an objective standard of reasonableness.'"  *Wiggins*, 539 U.S. at 521 (quoting

4

*Strickland*, 466 U.S. at 688)).  To establish prejudice, a petitioner must prove a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Allen v. Secretary, Fla. Dep't of Corr.*, 611 F.3d 740, 750 (11th Cir. 2010).  The court may "dispose of [the] ineffectiveness [claim] on either of its two grounds." *Atkins v. Singletary*, 965 F. 2d 952, 959 (11th Cir. 1992); *see Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

*Strickland*'s two-pronged test applies to counsel's representation of a defendant in connection with a guilty plea.  *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).  The Movant must show that his "counsel's constitutionally ineffective performance affected the outcome of the plea process," *Id.* at 59, by "convinc[ing] the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).  *See also Jackson v. United States*, 463 F. App'x 833, 835 (11th Cir. 2012) ("If [the movant] cannot establish both that counsel misadvised him and that a decision not to plead guilty would have been rational, his claim that his guilty plea was not knowing and voluntary due to counsel's ineffectiveness will fail.").  "[A] petitioner's bare allegation that he would not have pleaded guilty is insufficient to establish

5

prejudice under *Strickland*." *Roach v. Roberts*, 373 F. App'x 983, 985 (11th Cir. 2010) (per curiam) (citation omitted).

III.   Analysis

The Government argues that:   (1) Movant did not receive ineffective assistance of counsel when Mendelsohn withdrew the challenge to the loss amount at sentencing; (2) Movant has not demonstrated that his plea was involuntary based on counsel's withdrawal of the challenge to the loss amount; and (3) Mendelsohn's testimony that Movant told Mendelsohn that he did not want to appeal is more credible than Movant's testimony; therefore, Movant did not ask Mr. Mendelsohn to appeal.  The undersigned agrees with the Government.

A.   Evidence Presented At The Evidentiary Hearing.

During the evidentiary hearing, Mendelsohn testified that he was appointed to represent Movant from the inception of his case and spoke with Movant on a regular basis throughout his representation.  (Doc. 158 at 32-33).  According to Mendelsohn, Movant's guilt of the crimes was not much of an issue since he was initially apprehended at a Home Depot store while engaging in the ticket-switching activity, gave a complete confession, was let go to cooperate with the investigation and was caught again, in addition to all of the evidence of Movant's guilt *vis-a-vis* videos, pictures, and receipts.  (Doc. 158 at 34).  And Movant admitted to

6

Mendelsohn that he engaged in the ticket-switching scheme on more than one thousand occasions. (*Id.* at 39-40).

Instead, the big issue was in calculating the amount of loss, an issue which Mendelsohn and Movant spent a significant amount of time discussing over the course of Mendelsohn's representation. (*Id.*). During the course of his representation of Movant, Mendelsohn reviewed the indictment, the nature of the charges, and the facts with Movant, explained to Movant that he would waive his right to a trial if he entered a guilty plea, provided Movant with all of the discovery in the case, and explained the sentencing guidelines and minimum and maximum penalties associated with Movant's offenses. (Doc. 157 at 35-36). Ultimately after all of those conversations, Movant told Mendelsohn that he wanted to enter a guilty plea. (*Id.*). Mendelsohn did not promise Movant anything, including a particular sentence. (*Id.* at 36). Mendelsohn did tell Movant that he thought it was a "five year case," in that he estimated that Movant would receive only five years of imprisonment, but despite that guess Movant knew that the guidelines were much higher than five years. (*Id.* at 38).

At first, the Government argued that the loss amount was approximately two million dollars. (*Id.*). Movant and Mendelsohn both agreed that this two million dollar figure was too high, and Mendelsohn told Movant that they would fight

7

about the two million dollar loss amount at sentencing.[3]  (*Id.*).  During the plea hearing, the Government represented the loss amount to be over one million dollars – an amount which Mendelsohn still intended to challenge.  (*Id.* at 41-42).  At that time, the next lower level in the sentencing guidelines in connection with a loss amount was between $400,000 and one million dollars.  (Doc. 158 at 41).

In the final Presentence Report ("PSR"), the Government estimated the loss to be in that lower guideline range at $647,000.  (*See* PSR at 6).  This new, lower loss amount was conservative, as it did not take into account Movant's thefts from Lowe's stores or Movant's participation in the ticket-switching scheme for the time from 2008 through 2010.  (*Id.* at 41).  Although he told Movant that he would fight a million to a two million dollar loss amount at sentencing, for several reasons Mendelsohn believed that challenging this new, lower loss amount would be waging a losing battle.  (*Id.* at 42-43).  Indeed, although Mendelsohn believed there were some inaccuracies in the calculation of that loss, those inaccuracies were not enough to get Movant to the next lowest sentencing guideline level –as he would have to disprove approximately $250,000 worth of transactions which he did not think that he could do – but instead he thought he would be more successful challenging certain sentencing enhancements such as Movant's role in

---

[3] This loss amount is one of the reasons Movant did not enter into a negotiated plea agreement with the Government.  (Doc. 258 at 34).

the offense and whether the scheme involved sophisticated means. (Doc. 158 at 42, 44). Mendelsohn also had watched the sentencing of one of Movant's co-defendants – who arguably was a lesser participant than Movant – and that co-defendant admitted to the $647,000 loss amount. (Doc. 158 at 42, 44). And one of the theories of the defense loss calculation was based on Movant's claim that he did not ever engage in transactions involving a product called Lexan, but Mendelsohn did not think that he could prove that Movant was not involved with that product and was afraid that if he unsuccessfully tried to challenge the Lexan transactions, Movant could lose his three-level deduction for accepting responsibility.[4] (*Id.*).

Before sentencing, Mendelsohn discussed with Movant all of the reasons he thought that objecting to this new loss amount would be a losing proposition, and he and Movant went "back and forth" for about an hour before Movant ultimately decided that Mendelsohn should withdraw the objection. (Doc. 258 at 42-43). Had Movant not agreed with Mendelsohn, Mendelsohn would not have withdrawn the objection and would have continued to contest even this lower loss amount. (*Id.* at 43). Mendelsohn unequivocally denied Movant's claim that he told Movant

---

[4] According to the loss spreadsheet, there was video evidence in connection with several of those Lexan transactions, which would indicate that either Movant or one particular co-defendant or both were depicted in the transaction. (*See* 158 at 83; *See generally* Gov't Exh. No. 1).

he did not want to challenge the loss amount because he did not want to make Judge Duffey angry.  (Doc. 158 at 43).  In the end, Movant's sixty month sentence was only three months higher than the lowest end of his guideline range.  (*Id.* at 46-47).

On several occasions Mendelsohn explained the appellate process to Movant and, because Movant did not enter into a plea agreement, Mendelsohn also explained to Movant that he still retained his appellate rights.  (*Id.* at 45-46). During those conversations, Mendelsohn discussed with Movant the advantages and disadvantages of filing an appeal.  (*Id.* at 49).  After sentencing, Mendelsohn spoke with Movant about whether to file an appeal, and Mendelsohn specifically remembered that Movant decided not to file an appeal; if Movant had wanted to do so, Mendelsohn would have filed a notice of appeal on his behalf.  (*Id.* at 47).

Mendelsohn also specifically recalled a conversation with Movant several months later in February of 2015 when Movant told Mendelsohn that he had changed his mind and wanted to file an appeal.  (*Id.* at 48).  At that time, Movant was supposed to cooperate with the Government by testifying in a state case in order to potentially receive a sentence reduction under Rule 35 of the Federal Rules of Criminal Procedure.[5]  The Government had called Mendelsohn because

---

[5] Fed. R. Crim. P. 35 provides that upon the Government's motion, the court may reduce a sentence based on a defendant's substantial assistance after sentencing.

AO 72A
(Rev.8/82)

Movant refused to testify, and during his discussions with Mendelsohn about his refusal to cooperate Movant told Mendelsohn that he now wanted to appeal. (Doc. 158 at 48).  At that time Mendelsohn reminded Movant that he specifically had told Mendelsohn after sentencing that he did not want to appeal – which Movant acknowledged – and Mendelsohn then informed Movant that it was too late to file an appeal and that his only remedy would be to file a § 2255 motion. (*Id.*).  When Mendelsohn returned to his office he sent Movant the § 2255 forms  – which Movant apparently used to file the instant motion.  (*Id.*).

Much of Movant's testimony directly contradicted both Mendelsohn's testimony and his own previous statements.  Movant testified that the only reason he entered a guilty plea was because Mendelsohn told Movant that he would argue the loss amount at sentencing. (Doc. 158 at 89).  According to Movant, on the day of sentencing Mendelsohn told Movant that after he sat in on Movant's co-defendant's sentencing he changed his mind about arguing the loss amount because "the judge went ballistic on [his co-defendant's] lawyer for objecting to the money amount."  (*Id.* at 92).  Movant claimed that had he been aware that he could mention that he objected to the loss amount when Judge Duffey allowed him to speak at sentencing, Movant would have stopped the proceedings and told Mendelsohn he did not want to plea and that he wanted to go to trial.  (*Id.*). Movant indicated that Mendelsohn did not tell him that withdrawing the objection to the loss amount would waive the issue on appeal, as all Mendelsohn told him

11

was that he would "be all right" since the judge most likely would not sentence him to more than five years. (Doc. 158 at 94). Although Movant admitted his guilt to the charges in the indictment and conceded that he had confessed to the Secret Service in November of 2013 that he had been engaged in the ticket-switching scheme for six years, at the evidentiary hearing he explicitly denied that he was involved in the scheme for that length of time. (*Id.* at 100, 109). According to Movant, his memory had changed since then, as when he confessed to the Secret Service he was "just throwing a number out there," and that "when [he] got [his] memory back together" he knew it was not a six year time period because he had a full-time job in 2008 and 2009. (*Id.* at 102). Along those same lines, even though he admitted that he told the Secret Service that he had sold another co-defendant approximately one thousand fraudulently-obtained refund cards, that number also was incorrect because it "was just a number that come [sic] to my head." (*Id.* at 104). He admitted that he previously confessed to selling those refund cards to others, to defrauding Home Depot and Lowe's, and to making approximately three to four thousand dollars a month in that six year period. (*Id.* at 106).

Movant also testified that "a week or two" after sentencing he told Mendelsohn he wanted to file an appeal, that Mendelsohn told him "he would see what he could do" and that he never heard back from Mendelsohn. (Doc. 158 at 112-13). Interestingly, after the Government reminded Movant that Judge Duffey

12

had informed him at sentencing that he had fourteen days after judgment to file a notice of appeal and alluded to the fact that his alleged discussion with Mendelsohn may not have been during that period, Movant changed his recollection of the "one to two weeks" time frame to a definitive "one week" after sentencing. (*Id.* at 122). When Government counsel also reminded Movant that Judge Duffey had advised him to contact the Clerk if he had trouble reaching Mendelsohn to file a notice of appeal, Movant then added that he had, in fact, sent a letter to the Clerk – of which he has no copy and the Court has no record. (*See generally,* Docket; Doc. 158 at 114-15).

> B.    Movant's Plea Was Knowing And Voluntary.

Movant now claims that he relied on Mendelsohn's promise that he would challenge the loss amount at sentencing, and that Mendelsohn's failure to do so renders Movant's plea involuntary. Movant has not demonstrated that Mendelsohn's failure to challenge the loss amount at sentencing constituted ineffective assistance, or that Movant's plea was otherwise entered into involuntarily.

> 1.    The Record Of The Plea Colloquy Contradicts Movant's Claim.

It is well settled that there is a strong presumption that statements made during the plea colloquy are true. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity.");

13

*United States v. Niles*, 565 F. App'x 828, 831 (11th Cir. 2014) ("There is a strong presumption that statements made during a plea colloquy are true."); *accord, United States v. Munguia-Ramirez*, 267 F. App'x 894, 897 (11th Cir. 2008)*; Patel v. United States*, 252 F. App'x 970, 974 (11th Cir. 2007).   Where, as here, a Movant's claim of ineffective assistance of counsel is in direct conflict with his statements under oath, he has a strong burden to show that his statements under oath were false.   *Patel*, 252 F. App'x at 974-75.   Movant, however, has not met this burden.

Indeed, Movant stated that no one made any promises to him about the sentence he was to receive and that he had no agreements with anyone in connection with entering his plea. (Doc. 129 at 12, 14; Doc. 158 at 37-8).   Movant also stated that he understood that he could be sentenced to the maximum authorized punishment on each of the sixteen counts against him, that the Court was not bound by the guidelines and could impose a sentence more severe than the guideline recommendation, and that if the Court did so Movant would not be able to withdraw his plea.   (Doc. 129 at 19-20, 25, 27).   And despite Movant's claim that he relied on Mendelsohn's promise to challenge the loss amount at sentencing, the Court provided Movant with the opportunity to speak at sentencing, by which he apologized to Home Depot and his family for his actions.   (Doc. 140 at 27-28).   Notably, he did not mention to the Court the fact that Mendelsohn allegedly went back on his promise to challenge the loss amount, lending more credibility to

14

Mendelsohn's testimony that Movant did, in fact, agree that he should withdraw the objection.

And as will be discussed further herein in connection with his ineffective assistance of counsel claim, Movant's argument that had he known that Mendelsohn would not do so he would not have entered a plea and would have proceeded to trial is not credible.

> 2. <u>Mendelsohn Was Not Ineffective For Withdrawing His Objection To The Loss Amount At Sentencing.</u>

Movant also has not demonstrated that Mendelsohn's decision to withdraw the objection to the new loss amount was deficient. Indeed, Mendelsohn's testimony was that both he and Movant agreed that the original loss amount argued by the Government of almost two million dollars, as well as the amended loss amount of almost one million dollars argued by the Government at the plea hearing, all were too high. And in his sentencing memorandum Mendelsohn still objected to the new loss amount in the final PSR of $647,000, even though this amount resulted in a lower guideline range from the previously estimated loss amounts. Mendelsohn's reasons for withdrawing the objection to the loss amount – the amount was already lower than the one to two million dollar amount they both agreed was too high; the amount did not take into account the thefts from Lowe's or the transactions that occurred from 2008 through 2010; Mendelsohn would not be able to disprove Movant's connection with the Lexan products, and

even if he could, it would not be significant enough to lower his guideline level; Mendelsohn was afraid that if they unsuccessfully challenged the Lexan transactions Movant would lose his deduction for acceptance of responsibility; Movant's co-defendant, a lesser participant, agreed to that same loss amount; Mendelsohn believed he would have more success challenging the sentencing enhancements – all certainly were reasonable, strategic reasons to withdraw the objection. And Mendelsohn successfully challenged the enhancements for both sophisticated means and aggravating role, both of which resulted in a lower offense level. (Doc. 130 at 5, 19-20). Movant cannot demonstrate that this decision on Mendelsohn's part was anything other than a reasonable, professional and strategic decision. Thus, Movant has failed to show that Mendelsohn was ineffective. *See, e.g., Calkins v. United States*, 795 F.3d 896, 898 (8th Cir. 2015) (holding counsel's decision after reviewing the government's evidence on loss to focus on leniency under the § 3553(a) factors rather than risk losing an acceptance of responsibility reduction was not ineffective assistance); *United States v. Patasnik*, 89 F.3d 63, 67 (2d Cir. 1996) (rejecting claim that counsel was ineffective for failing to challenge amount of losses).

Nor has Movant demonstrated that he was prejudiced thereby, first and foremost because he agreed to it.[6] And despite Movant's after-the-fact claim that

---

[6] As set forth previously in Section III.A., Movant's testimony at the evidentiary hearing was just not credible. For example, Movant explicitly denied

16

had he known that Mendelsohn was not going to challenge the loss amount at sentencing he never would have entered into the plea and would have proceeded to trial, he has not demonstrated that a decision not to enter a guilty plea would have been rational. *See Padilla*, 559 U.S. at 356; *Jackson v. United States*, 463 F. App'x at 835. Indeed, there was overwhelming evidence and "never a question" of Movant's guilt since Movant completely confessed the first time he was caught, was let go to cooperate and was caught again, and a multitude of videotapes and receipts corroborated his participation in the scheme. Additionally, Mendelsohn always told him he thought it was "five year case," which is the precise sentence Movant received.

On the other hand, had Movant proceeded to trial, he faced a maximum twenty-year sentence on each of the sixteen counts against him, would have lost his reduction for acceptance of responsibility – resulting in a three-level increase in his offense level – and it is questionable whether he still would have received a sentence at the lower end of the guideline range. And, had the amount Movant claims as the minimum amount that Mendelsohn could have contested ($228,788.84 [Doc. 162 at 23]) successfully been challenged, the result would have

---

or tried to change many of the facts to which he confessed in detail to the Secret Service in November of 2015, and adamantly denied that Mendelsohn ever went over the PSR with him – despite stating the opposite to the Court during the sentencing hearing. (Doc. 158 at 89-90, 123; Doc. 130 at 2-3). In contrast, Mendelsohn's unequivocal testimony about what occurred during his representation of Movant was much more credible.

17

been $418,000, which would have resulted in the same guideline range.  Movant's argument also does not consider that the Government's final loss estimate was conservative as it did not take into account any of the transactions that occurred at Lowe's or any transactions that occurred between 2008 and 2010.

Movant's own statements show that a challenge to the loss amount would not have made a difference in his sentence.  Movant admitted both to the Secret Service and during the evidentiary hearing that he made approximately $3000 to $4000 per month – or an average of $3500 – during the time he was engaged in the scheme.  (Doc. 158 at 108).  He also told the Secret Service he had engaged in the scheme for six years, which, if averaging $3500 per month would have netted him $252,000 over those six years.  By his admission, he sold the fraudulent refund cards for sixty percent of their face value, and thus, the total loss to Home Depot by Movant's own account would have been $420,000 (*i.e.,* $252,000 divided by sixty percent), resulting in the same guideline range, and  Movant  has not demonstrated prejudice.  *See, e.g., Calkins*, 795 F.3d at 898 (holding no prejudice for counsel's failure to contest loss amount because if counsel had contested the amount, at most she could have secured a two point decrease in the defendant's offense level, whereas "by making the strategic choice to accept responsibility and request lenience under § 3553(a)," the defendant received a three point offense level decrease and a 12 month downward variance); *Baston v. United States*, Nos. 10CV4344 (HB), 07CR750 (HB), 2011 WL 3962643, at *4 (S.D. N.Y. Sept. 8,

2011) (rejecting ineffective assistance of counsel claim based on counsel's concession to the loss amount because, *inter alia*, there was no reasonable probability that the result of the sentencing would have been different but for the concession). Accordingly, Movant's claim that his plea was involuntary based on Mendelsohn's alleged ineffective assistance is without merit. *See Jackson v. United States*, 463 F. App'x 833, 835 (11th Cir. 2012) ("If [the movant] cannot establish both that counsel misadvised him and that a decision not to plead guilty would have been rational, his claim that his guilty plea was not knowing and voluntary due to counsel's ineffectiveness will fail."); *see also United States v. Costa*, No. 1:11-CR-00026-LJO, 2015 WL 5915258, at *4 (E.D. Cal. Oct. 7, 2015) (finding no rational defendant would have rejected the plea and gone to trial based on counsel's alleged failure to investigate where the petitioner was sentenced to 78 months, but had he been convicted after trial he would not have been eligible for the three-level reduction for acceptance of responsibility and faced up to 360 months of prison time); *United States v. Elliott*, Nos. 2:11–21-DCR, 2:12-7215-DCR, 2012 WL 4887255, at *13 (E.D. Ky. Oct. 15, 2012) (despite petitioner's claim of ineffective assistance for counsel's failure to "provide forensic financial loss statements supporting the actual loss amount" her statement that she would not have entered into a plea would not have been rational as she faced a strong case on the merits, bolstered by potential testimony of her co-defendants, she received a reduction for acceptance of responsibility, the possibility that she could have

19

received an aggravating role adjustment was not foreclosed, and she fully understood at the time of her plea that the terms were not binding on the Court).

To the degree that Movant now argues that counsel should have requested a restitution hearing, he also has neither demonstrated deficient performance nor prejudice.  The determination of a restitution amount "'is by nature an inexact science[.]'"  *United States v. Huff*, 609 F.3d 1240, 1248 (11th Cir. 2010).  In addition, "[t]he amount of loss caused by fraud is difficult to determine accurately. Thus, courts may reasonably estimate the amount."  *United States v. Miller*, 188 F.3d 1312, 1317 (11th Cir. 1999).  Mendelsohn explained to Movant that the loss amount listed in the PSR would likely be the restitution amount, and the Court's reliance on that amount to determine restitution was reasonable.  *See United States v. Gjidija*, 369 F. App'x 282, 284-5 (2d Cir. 2010) ("It was permissible for the court to rely on the PSR in apportioning the restitution award.").  For this reason and those reasons set forth in connection with the loss amount, this claim of ineffective assistance also fails.

> D.  <u>Mendelsohn Was Not Ineffective In Connection With Movant's Appellate Rights.</u>

In this Circuit, the right to appeal a criminal case is fundamental.  *See Arrastia v. United States*, 455 F.2d 736, 739 (5th Cir. 1972) (citations and

quotations omitted).[7]  When an attorney disregards instructions from a defendant to file an appeal, therefore, such disregard constitutes ineffective assistance of counsel *per se*.  *Roe v. Flores-Ortega*, 528 U.S. 470, 477-86 (2000).  This type of ineffective assistance claim also is analyzed under the two-pronged *Strickland* test.  *Id.* at 476-77.

Again, Mendelsohn's unequivocal testimony that Movant told him immediately after sentencing that he did not want to appeal is more credible than Movant's testimony that "a week or two" – later changed to a definitive "one week" – after sentencing he told Mendelsohn he wanted to appeal.  Indeed, both Movant and Mendelsohn testified that in February of 2015 Movant told Mendelsohn that he wanted to appeal – although Movant's version was that Mendelsohn "didn't want to talk about an appeal" while Mendelsohn testified that he reminded Movant that he had decided not to appeal and that it now was too late to do so.  It appears that Movant had second thoughts after the time period for filing an appeal had expired, based on conversations he had with other inmates, since during his time in prison he decided his sentence was too long because he met "guys that's in the prison system that did way worst things than [him] and they got away less time than [him]."  (Doc. 158 at 98).  But the Court credits

---

[7] Decisions of the former Fifth Circuit filed prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981).

AO 72A
(Rev.8/82)

Mendelsohn's testimony over Movant's that Movant never asked him to file an appeal until it was too late.

Thus here, where Movant did not specifically ask for an appeal, the first inquiry the Court must make is whether Mendelsohn actually consulted with Movant about an appeal. *Flores-Ortega*, 528 U.S. at 478; *Thompson v. United States*, 504 F.3d 1203, 1206 (11th Cir. 2007). Counsel's duty to consult with his client requires counsel to inform the defendant about the right to appeal, advise the defendant about the advantages and disadvantages of an appeal, and make a reasonable effort to determine whether the defendant wishes to pursue the appeal – regardless of the merits of such an appeal. *Flores-Ortega*, 528 U.S. at 478; *Thompson v. United States*, 504 F.3d 1203, 1206 (11th Cir. 2007). If counsel did not adequately consult with the movant, the Court next must ask whether that constituted deficient performance – *i.e.*, whether under the circumstances of that particular case counsel had a constitutional duty to consult with the defendant about an appeal. *Flores-Ortega*, 528 U.S. at 479; *Thompson*, 504 F.3d at 1207.

As discussed previously in Section III.B., *supra*, Mendelsohn testified that on several occasions Mendelsohn explained to Movant on several occasions the appellate process and that he still retained his appellate rights, and after sentencing he discussed the appellate rights with Movant again. Mendelsohn plainly satisfied the duty to consult with Movant about an appeal. Accordingly, Movant has not

demonstrated ineffective assistance of counsel, and the instant motion to vacate should be denied.

IV.   Conclusion

Based on the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Robert Lee Hatcher, III's motion to vacate sentence [Doc. 126] be **DENIED WITH PREJUDICE**.

V.   Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   28 U.S.C. § 2253(c)(2) provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   In order for the certification requirement to fulfill its function of weeding out frivolous appeals, a court should not automatically issue a COA; rather, the applicant must prove "something more than the absence of frivolity" or "the existence of mere 'good faith' on his or her part."   *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

Movant need not prove, however, that some jurists would grant the § 2255 motion.   *See id.*   "The question is the debatability of the underlying constitutional claim, not the resolution of that debate."   *See Lamarca v. Secretary, Dep't of Corr.*,

568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325).  In other words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Based on the foregoing discussion of Movant's claims, reasonable jurists would not find "debatable or wrong" the undersigned's determination that Movant did not demonstrate ineffective assistance of counsel, that he voluntarily entered into his plea, and/or that his other claims were without merit.  *See Slack*, 529 U.S. at 484.

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be **DENIED**.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED** this 19th day of July, 2016.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)