# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

**ROBERT LEE HATCHER, III,**

    **Movant,**

v.

    **1:14-cr-145-WSD-1**

    **1:15-cv-1817-WSD**

**UNITED STATES OF AMERICA,**

    **Respondent.**

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge Justin S. Anand's Final Report and Recommendation [168] ("R&R"), recommending that Movant Robert Lee Hatcher III's ("Hatcher") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2255 [126] ("§ 2255 Motion") be denied and that a certificate of appealability be denied. Also before the Court are Hatcher's Objections to the Magistrate Judge's Report and Recommendation [170] ("Objections").[1]

---

[1] Citations to the record, in this Order, refer to criminal action number 1:14-cr-145-WSD-1.

## I. BACKGROUND

A grand jury indicted Movant and three co-defendants and charged them with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, and fifteen counts of wire fraud in violation of 18 U.S.C. § 1343. The charged conduct involved a "ticket-switching" scheme conducted at Home Depot stores all over the country by which Movant and his codefendants would cover high priced UPC labels on merchandise with lower-priced UPC labels, purchase the items, return them at the higher price to get store credit with a refund balance, and sell those refund cards to others at a discount. ([11]). On July 18, 2014, while represented by Brian Mendelsohn, Movant entered into a guilty plea without a plea agreement to all sixteen charges [87]. On October 28, 2014, the Court sentenced him to a concurrent sixty months of imprisonment on each count plus restitution. ([110]).

Movant filed a § 2255 motion in this Court on May 18, 2015, and raised the following claims: (1) his guilty plea was involuntary as a result of ineffective assistance of counsel; (2) counsel was ineffective for failing to challenge the loss amount at sentencing; and (3) he was denied meaningful appeal of his sentence because counsel refused to appeal his sentence after being requested to do so. ([126.1] at 3, 5). Because the record of this case did not conclusively demonstrate

whether Movant's counsel failed to follow Movant's instruction to file an appeal or what, if any, communications occurred between Movant and his attorney, the Magistrate Judge believed it prudent to hold a limited evidentiary hearing as to these issues. ([141]; [168] at 2). The Magistrate Judge appointed counsel for Movant and subsequently granted his motion to expand the evidentiary hearing to include all three grounds for relief, and held an evidentiary hearing on April 13, 2016. ([146], [157]; [168] at 2). As relief, Movant seeks to withdraw his guilty plea, or in the alternative, vacate his sentence so that he can raise objections to the loss amount before being resentenced. ([162] at 30). Movant also asks that if the Court finds that Ground Three is the only viable issue, the Court vacate and reissue the judgment so that he may file a direct appeal. (Id.).

On July 19, 2016, the Magistrate Judge issued his R&R, recommending that Hatcher's § 2255 Motion be denied with prejudice and that a certificate of appealability be denied. ([168] at 23-24). On August 2, 2016, Hatcher filed his Objections to the R&R. ([170]).

## II. DISCUSSION

### A. Legal Standard

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate

judge's report and recommendation. 28 U.S.C. § 636(b)(1); <u>Williams v. Wainwright</u>, 681 F.2d 732 (11th Cir. 1982), <u>cert. denied</u>, 459 U.S. 1112 (1983). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). With respect to those findings and recommendations to which objections have not been asserted, the Court must conduct a plain error review of the record. <u>United States v. Slay</u>, 714 F.2d 1093, 1095 (11th Cir. 1983), <u>cert. denied</u>, 464 U.S. 1050 (1984). The Court conducts a *de novo* review of the specific portions of the R&R to which Hatcher objects. The Court reviews the remainder of the R&R for plain error.

*De novo* determination does not require the Court to rehear testimony in order to accept the Magistrate Judge's credibility determinations. <u>See</u> <u>United States v. Raddatz</u>, 447 U.S. 667, 674-76 (1980). The Supreme Court explained:

> [28 U.S.C. § 636(b)(1)] calls for a *de novo* determination, not a *de novo* hearing. We find nothing in the legislative history of the statute to support the contention that the judge is required to rehear the contested testimony in order to carry out the statutory command to make the required "determination."

<u>Id.</u> at 674. "[T]o construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the

increasing congestion of litigation in the district courts." Id. at 676 n.3. A district court, however, generally "must rehear the disputed testimony before *rejecting* a magistrate judge's credibility determinations." United States v. Dorvilus, 357 Fed App'x 239, 245, 2009 WL 4854131, 5 (11th Cir. 2009) (citing United States v. Cofield, 272 F.3d 1303, 1306 (11th Cir. 2001) (emphasis in original).

B. The Strickland Standard in the Context of a Guilty Plea

> To prevail on a claim of ineffective assistance, a defendant must establish two things: (1) "counsel's performance was deficient," meaning it "fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687-88 (1984). To satisfy the deficient-performance prong, the defendant must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment. Id. at 687. The defendant must rebut the strong presumption that his counsel's conduct fell within the range of reasonable professional assistance. Id. at 689. A defendant may satisfy the prejudice prong by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Connolly v. United States, 568 Fed. App'x. 770, 770-71 (11th Cir. 2014) (noting that "[w]hen a defendant pleads guilty relying upon his counsel's best professional judgment, he cannot later argue that his plea was due to coercion by counsel," and affirming summary dismissal of a § 2255 motion because appellant's "conclusory allegations of coercion by his attorney . . . failed to rebut the strong presumptions that [(1)] his attorney's advice fell within the range of reasonable

5

professional conduct and [(2) his] sworn statements in his plea agreement and at his change-of-plea hearing were true").

   C.   Analysis

      1.   The Magistrate Judge's Summary of the Evidence Presented at the Evidentiary Hearing

The Magistrate Judge provided a detailed recitation of the evidence introduced during the evidentiary hearing. ([168] at 6-13). Although Movant objects to the Magistrate Judge's application of the deduced facts to his claims for relief, Movant did not specifically object to any particular finding in this section. Having reviewed the record and found no plain error, the Court agrees with the Magistrate Judge's summary of the evidence and adopts these evidentiary findings. The Court addresses the Magistrate Judge's application of these facts to Movant's claims and Movant's objections to the Magistrate Judge's findings on those claims below.

      2.   Hatcher's First Ground for Relief: Movant's Plea Was Involuntary as a Result of Ineffective Assistance of Counsel

Hatcher objects to the Magistrate Judge's conclusion that his plea was knowing and voluntary and argues that he relied on a promise by his counsel, Mendelsohn, to challenge the loss amount at sentencing. ([170] at 7). The Magistrate Judge began by noting that there is a strong presumption that statements

6

made during a plea colloquy are true. ([168] at 13-14, citing Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); United States v. Niles, 565 F. App'x 828, 831 (11th Cir. 2014) ("There is a strong presumption that statements made during a plea colloquy are true."). Here, Hatcher stated under oath that: (1) no one made any promises to him about the sentence he was to receive; (2) he had no agreements with anyone in connection with entering his plea; (3) he understood that he could be sentenced to the maximum authorized punishment on each of the sixteen counts against him; (4) the Court was not bound by the guidelines and could impose a sentence more severe than the guideline recommendation; and (5) if the Court did so Movant would not be able to withdraw his plea. ([129] at 12, 14, 19-20, 25, 27; [158] at 37-38). The Magistrate Judge noted that when Hatcher spoke at sentencing "he did not mention to the Court the fact that Mendelsohn allegedly went back on his promise to challenge the loss amount, lending more credibility to Mendelsohn's testimony that Movant did, in fact, agree that he should withdraw the objection." ([168] at 14-15). The Magistrate Judge concluded that Hatcher did not meet his strong burden to show that his statements made under oath were false. ([168] at 14).

Hatcher argues that "the questions asked at the plea colloquy did not specifically address the issue raised in Mr. Hatcher's motion, that is whether Mr. Hatcher relied upon misleading representations of counsel when he decided to enter a guilty plea." ([170] at 7-8). Hatcher maintains that the plea should be deemed void because "[t]he record is clear that counsel did promise that he would challenge the loss amount at sentencing and it is this statement that induced Mr. Hatcher to plead guilty." ([170] at 8). Hatcher surmises that "[c]ounsel's promise to challenge the loss amount coerced [him] into an 'unknowing' and 'involuntary' plea." ([170] at 9). He maintains that he would not have pleaded guilty if Mr. Mendelsohn had told him that he was not planning to challenge the loss amount. ([170] at 11-12). Hatcher asserts that, during a meeting shortly before sentencing, Mendelsohn refused to object to the loss amount at sentencing, despite his protestation, and that Mendelsohn told him his potential sentence would "probably" be three and a half years with the RDAP program. ([170] at 14-15). Hatcher argues that "[t]he Magistrate erred when it determined that counsel did not provide ineffective assistance at the plea stage because counsel's statements regarding loss misled Mr. Hatcher into believing that he would be able to challenge the government's loss figure at sentencing and, thus, induced him to enter a plea without fully understanding the consequences of that plea." ([170] at 16-17).

8

The Court agrees with the Magistrate Judge that Hatcher's plea was knowing and voluntary. Mendelsohn indisputably represented that, guilt having been admitted, the loss amount was the big issue. The record reflects that at the time the Government's approximation of the loss amount was two million dollars. ([157] at 38). During the plea hearing, the Government represented the loss amount to be over one million dollars. ([157] at 38). At that time, the next lower level in the sentencing guidelines in connection with a loss amount was between $400,000 and one million dollars. ([158] at 41). It is undisputed that Mendelsohn followed through with his promise to challenge the loss amount at sentencing by objecting to the presentence investigation report and by filing a sentencing memorandum specifically challenging the loss amount. ([170] at 12-13). In the final Presentence Report ("PSR"), the Government estimated the loss to be in that lower guideline range at $647,000. (*See* PSR at 6). The anticipated loss amount at sentencing was much lower than that contemplated by Hatcher at the time of his plea.

The Court further agrees with the Magistrate Judge that Movant failed to demonstrate that Mendelsohn's decision to withdraw the objection to the new loss amount was "anything other than a reasonable, professional and strategic decision." ([168] at 16). Mendelsohn withdrew the objection to the loss amount because: (1) the amount was already lower than the one to two million dollar

9

amount that he and Hatcher agreed was too high; (2) the amount did not take into account the thefts from Lowe's or the transactions that occurred from 2008 through 2010; (3) Mendelsohn would not be able to disprove Movant's connection with the Lexan products, and even if he could, it would not be significant enough to lower his guideline level; (4) Mendelsohn was afraid that if they unsuccessfully challenged the Lexan transactions Movant would lose his deduction for acceptance of responsibility; (5) Movant's co-defendant, a lesser participant, agreed to that same loss amount; and (6) Mendelsohn believed he would have more success challenging the sentencing enhancements. ([168] at 15-16).

The Magistrate Judge further concluded that Hatcher failed to demonstrate that he was prejudiced by the decision to withdraw the loss amount objection "first and foremost because he agreed to it." ([168] at 16). The Magistrate Judge found Hatcher's testimony to the contrary not credible:

> Movant's testimony at the evidentiary hearing was just not credible. For example, Movant explicitly denied or tried to change many of the facts to which he confessed in detail to the Secret Service in November of 2015, and adamantly denied that Mendelsohn ever went over the PSR with him – despite stating the opposite to the Court during the sentencing hearing. (Doc. 158 at 89-90, 123; Doc. 130 at 2-3). In contrast, Mendelsohn's unequivocal testimony about what occurred during his representation of Movant was much more credible.

([168] at 16 n. 6). After reviewing the record *de novo*, the Court agrees with that credibility determination.

The Magistrate Judge further found that "despite Movant's after-the-fact claim that had he known that Mendelsohn was not going to challenge the loss amount at sentencing he never would have entered into the plea and would have proceeded to trial, he has not demonstrated that a decision not to enter a guilty plea would have been rational." ([168] at 16-17, citing Padilla, 559 U.S. at 356; Jackson v. United States, 463 F. App'x at 835. The Magistrate Judge based that conclusion on the overwhelming evidence of Movant's guilt in that "Movant completely confessed the first time he was caught, was let go to cooperate and was caught again, and a multitude of videotapes and receipts corroborated his participation in the scheme." ([168] at 17).

The Magistrate Judge also noted that: (1) Mendelsohn always told him he thought it was "five year case," which is the precise sentence Movant received; (2) had the amount Movant claims as the minimum amount that Mendelsohn could have contested ($228,788.84 [Doc. 162 at 23]) successfully been challenged, the result would have been $418,000, which would have resulted in the same guideline range and would not have made a difference in his sentence. ([168] at 17-18). The Magistrate Judge thus concluded that "Movant's claim that his plea was

11

involuntary based on Mendelsohn's alleged ineffective assistance is without merit." ([168] at 19, citing <u>Jackson v. United States</u>, 463 F. App'x 833, 835 (11th Cir. 2012) ("If [the movant] cannot establish both that counsel misadvised him and that a decision not to plead guilty would have been rational, his claim that his guilty plea was not knowing and voluntary due to counsel's ineffectiveness will fail.")).

The Court, having conducted a *de novo* review, overrules Hatcher's objections on this issue and adopts the Magistrate Judge's finding that Movant's claim that his plea was involuntary based on Mendelsohn's alleged ineffective assistance is without merit.

> 3. <u>Hatcher's Second Ground for Relief: Counsel Was Ineffective for Withdrawing His Objection to the Loss Amount at Sentencing</u>

Hatcher objects to the Magistrate Court's finding that Mr. Mendelsohn was not ineffective for withdrawing the objection to the loss amount at sentencing. ([170] at 17). Hatcher denies that he agreed to withdraw any objections to the loss amount prior to sentencing and argues that "in a case where both defense counsel and defendant agreed that loss was the most important issue in the case, it makes no sense strategically to abandon this claim and waive any chance of raising it on appeal." ([170] at 17). Hatcher "concedes that he has not shown to a mathematical

12

certainty that any loss challenge would have been successful in reducing [his] sentencing guideline range," but maintains that "the record supports his claim that a challenge to the restitution amount would have been successful." (Id.). Hatcher cites transactions totaling $228,788.84 "that could have been questioned by Mr. Mendelsohn and Mr. Hatcher at sentencing." ([170] at 22). Hatcher maintains that "based on [his] repeated claims that the money amount was too high, counsel should have at least requested a restitution hearing on behalf of Mr. Hatcher." ([170] at 22-23).

With respect to the restitution amount, the Magistrate Judge stated:

To the degree that Movant now argues that counsel should have requested a restitution hearing, he also has neither demonstrated deficient performance nor prejudice. The determination of a restitution amount "'is by nature an inexact science[.]'" United States v. Huff, 609 F.3d 1240, 1248 (11th Cir. 2010). In addition, "[t]he amount of loss caused by fraud is difficult to determine accurately. Thus, courts may reasonably estimate the amount." United States v. Miller, 188 F.3d 1312, 1317 (11th Cir. 1999). Mendelsohn explained to Movant that the loss amount listed in the PSR would likely be the restitution amount, and the Court's reliance on that amount to determine restitution was reasonable. See United States v. Gjidija, 369 F. App'x 282, 284-5 (2d Cir. 2010) ("It was permissible for the court to rely on the PSR in apportioning the restitution award."). For this reason and those reasons set forth in connection with the loss amount, this claim of ineffective assistance also fails.

([168] at 20).

For the reasons explained earlier in this Order, the Court agrees with the

Magistrate Judge's determination that counsel's withdrawal of the objection to loss amount, and thus restitution, was not constitutionally deficient. As explained, ample reasons existed to withdraw the objection to the loss amount, doing so was reasonable under the circumstances, and Hatcher's denial of having acquiesced to the decision to withdraw the objection is not credible. Hatcher also knew that "if we don't object to the loss amount, that amount will probably end up being your restitution amount." ([158] at 65). Though the government bore the burden of proving the restitution amount, any objection to restitution was uncertain at best and threatened to undermine counsel's reasonable strategy to obtain the minimum sentence possible.

The Court, having conducted a *de novo* review, overrules Hatcher's objections on this issue and adopts the Magistrate Judge's finding that Mendelsohn was not ineffective for failing to challenge the loss amount or restitution.

    4.    <u>Hatcher's Third Ground for Relief: Denial of Appeal Because Counsel Refused to Appeal</u>

Hatcher objects to the Magistrate Court's finding that Mendelsohn did not provide ineffective assistance of counsel in connection with his appeal. ([170] at 25). The Magistrate Judge noted that "[w]hen an attorney disregards instructions from a defendant to file an appeal . . . such disregard constitutes ineffective assistance of counsel *per se*" and that "[t]his type of ineffective

14

assistance claim also is analyzed under the two-pronged Strickland test." ([168] at 21, citing Roe v. Flores-Ortega, 528 U.S. 470, 476-86 (2000)). The Magistrate Judge "credit[ed] Mendelsohn's testimony over Movant's that Movant never asked him to file an appeal until it was too late." ([169] at 21-22). Specifically, the Magistrate Judge found that "Mendelsohn's unequivocal testimony that Movant told him immediately after sentencing that he did not want to appeal is more credible than Movant's testimony that 'a week or two' – later changed to a definitive 'one week' – after sentencing he told Mendelsohn he wanted to appeal." ([168] at 21).

Hatcher objects to the Magistrate Judge's credibility determination arguing that "[t]he testimony on this issue was not as unequivocal as the Magistrate Court suggests. There is no record or testimony regarding any meeting immediately after sentencing." ([170] at 25).

Mendelsohn testified that he discussed an appeal with Hatcher following sentencing and, although he did not recall the specifics of their conversation, he was "very clear that we had made the decision not to file an appeal." ([158] at 47). Mendelsohn's unequivocal recollection that Hatcher decided not to file an appeal outweighs Hatcher's equivocal and self-serving testimony that he requested an

15

appeal be filed within two weeks of sentencing. As noted, ample reasons exist to question Hatcher's credibility.

The Court, having conducted a *de novo* review, overrules Hatcher's objections on this issue and adopts the Magistrate Judge's finding that Mendelsohn was not ineffective for failing to appeal Hatcher's sentence.

Hatcher's § 2255 Motion is denied.

### 5. Certificate of Appealability

Rule 11 of the Rules Governing § 2255 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A federal prisoner may not appeal the denial of his § 2255 motion "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citations and quotation marks

appeal be filed within two weeks of sentencing. As noted, ample reasons exist to question Hatcher's credibility.

The Court, having conducted a *de novo* review, overrules Hatcher's objections on this issue and adopts the Magistrate Judge's finding that Mendelsohn was not ineffective for failing to appeal Hatcher's sentence.

Hatcher's § 2255 Motion is denied.

### 5. Certificate of Appealability

Rule 11 of the Rules Governing § 2255 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A federal prisoner may not appeal the denial of his § 2255 motion "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citations and quotation marks

appeal be filed within two weeks of sentencing. As noted, ample reasons exist to question Hatcher's credibility.

The Court, having conducted a *de novo* review, overrules Hatcher's objections on this issue and adopts the Magistrate Judge's finding that Mendelsohn was not ineffective for failing to appeal Hatcher's sentence.

Hatcher's § 2255 Motion is denied.

### 5. Certificate of Appealability

Rule 11 of the Rules Governing § 2255 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A federal prisoner may not appeal the denial of his § 2255 motion "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citations and quotation marks

omitted); see Jones v. United States, 224 F.3d 1251, 1254 (11th Cir. 2000) (applying the Slack standard in a § 2255 case). That Hatcher has failed to show he is entitled to relief is not reasonably debatable. A certificate of appealability is denied.

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Judge Justin S. Anand's Final Report and Recommendation [168] is **ADOPTED**.

**IT IS FURTHER ORDERED** that Movant Robert Lee Hatcher III's Objections to Magistrate Judge's Report and Recommendation [170] are **OVERRULED**.

**IT IS FURTHER ORDERED** that Movant Robert Lee Hatcher III's Motion under 28 U.S.C. § 2255 [126] is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that civil action number 1:15-cv-1817-WSD is **DISMISSED**.

**SO ORDERED** this 1st day of June, 2018.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE